UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANDRO LEONEL GONZALEZ CASTILLO,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>A. RENTERIA *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No.: 17-CV-2104-CAB(WVG)<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 30.]** |

Plaintiff Leandro Leonel Gonzalez Castillo, proceeding *pro se* and *in forma pauperis*, filed a Complaint pursuant to 42 U.S.C. § 1983, claiming violation of his constitutional rights under the First and Eighth Amendments. Defendants have filed a summary judgment motion (or "MSJ") on the basis that Plaintiff cannot prove his claims as a matter of law based on the undisputed facts. Defendants Romero and Renteria further contend they are entitled to qualified immunity. This Court RECOMMENDS that Defendants' MSJ be GRANTED and judgment be entered in their favor.

/ / /

/ / /

/ / /

# I. BACKGROUND

## A. Undisputed Material Facts

Plaintiff is currently an inmate at Mule Creek State Prison in Ione, California. At all times relevant to this action, however, he was housed at the Richard J. Donovan Correctional Facility in San Diego, California. (ECF No. 1 at 8.) Defendants Renteria and Romero were correctional officers at Donovan. (*Id*.) Defendant Segovia was a correctional sergeant there. (*Id*. at 10.) Plaintiff alleges claims against these three defendants based on three separate but related events.

### 1. February 6, 2016–Defendants Renteria and Romero

On February 6, 2016, Renteria and Romero were yard officers who searched inmates when they left and returned to the yard. (Fact 2, ECF No. 30-2 at 2.) On that date, during a clothed body search yard, Plaintiff alleges Renteria sexually assaulted him by squeezing his right buttock three times, and that Romero was present but did not stop the assault. (Fact 1, *id.*) Plaintiff had a thin handkerchief folded into a square in his back pants pocket. (Fact 4, *id.*) While performing the clothed body search, Renteria put his hand exactly over Plaintiff's back pocket and grabbed the handkerchief and Plaintiff's buttocks cheek underneath and squeezed three times, but he did not do so in a "harsh" way. (Fact 5, *id.*) The patting of the back pocket did not last long—only seconds. (Fact 6, *id.*) At deposition, Plaintiff described Renteria's actions during the search as "clowning around like that." (Fact 7, *id.*) As part of this search, Renteria touched Plaintiff's chest area, which is a normal part of the search, but he did not pat down Plaintiff's groin area. (Fact 8, *id*. at 3.)

### 2. February 8, 2016–Defendant Segovia

After the above incident, Plaintiff complained to his clinician, which led to an Investigative Services Unit (ISU) investigation. (Fact 9, *id.*) After Plaintiff was interviewed by two ISU staff members on February 8, 2016, Segovia allegedly retaliated against him for complaining by verbally threatening to kill Plaintiff about six times. (Fact 10, *id.*) Plaintiff responded to Segovia by saying, "kill me." (Fact 11, *id.*) When Segovia allegedly walked toward Plaintiff with his hands elevated as if to place them around

Plaintiff's neck, Plaintiff looked down at Segovia's name tag and stated, "I got you." (Fact 12, *id.*) After being identified by his name, Segovia immediately left the cell. (Fact 13, *id.*) Plaintiff believed Segovia left the cell because he understood that Plaintiff knew his name and could file a complaint against Segovia if he wanted to do so. (Fact 14, *id.*)

### 3. June 25, 2016–Defendants Renteria and Romero

Plaintiff next alleges that on June 25, 2016, Renteria sexually assaulted him during a clothed body search by rubbing Plaintiff's nipples, and that Romero was present, but did not stop the assault. (Fact 15, *id.* at 4.)

On June 25, 2016, Officer Renteria stopped Plaintiff to search him as Plaintiff returned to the yard from church. (Fact 16, *id.*) This was also a clothed body search. (Fact 17, *id.*) Standing behind Plaintiff, Officer Renteria searched the sides of Plaintiff's torso, then Plaintiff's stomach, then his hands went up to Plaintiff's chest. (Fact 18, *id.*) Renteria's hands were open and his fingers were apart as he rubbed and "caressed" the front of Plaintiff's torso. (Fact 19, *id.*; ECF No. 30-4 at 12-14.) When Renteria reached Plaintiff's nipples, he allegedly started rubbing them. (Fact 20, ECF No. 30-2 at 4.) Renteria did not use his thumb, just his four fingers, which were flat on Plaintiff's chest. (Fact 21, *id.*) Plaintiff yelled "sexual assault," and Renteria allegedly told Plaintiff to be quiet or he would throw him to the ground. (Fact 22, *id.*) The touching of Plaintiff's nipples lasted no more than fifteen to twenty seconds. (Fact 23, *id.* at 5.) Thereafter, Renteria completed the search by patting the bottom part of Plaintiff's legs. (Fact 24, *id.*)

### B. Procedural Background

Plaintiff commenced this action on October 12, 2017 and alleges that Defendants violated his First and Eighth Amendment rights based on the three incidents described above. Plaintiff seeks compensatory and punitive damages, a declaratory judgment, a preliminary injunction and temporary restraining order, and cost of suit and reasonable attorney's fees.

On March 27, 2019, Defendants filed a summary judgment motion. (ECF No. 30.) That same day, the Court advised Plaintiff of his rights and obligations to oppose the MSJ

pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 31.) Plaintiff filed two oppositions on April 24 and 25, 2019. (ECF Nos. 32 and 33.) Defendants filed their reply on May 20, 2019. (ECF No. 35.)

## II.  LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine dispute as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence in the light most favorable to the non-moving party and may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *Tolan v. Cotton*, 572 U.S. 650 (2014) (per curium). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.  DISCUSSION

Defendants have identified undisputed material facts based on Plaintiff's own Complaint and deposition. They have not submitted competing evidence of their own or a different version of events. Accordingly, there is no dispute of facts, and Defendants contend they are entitled to summary judgment even if the facts in the Complaint and Plaintiff's deposition are credited as true. This Court agrees.

### A.  Eighth Amendment Claim Against Renteria and Romero

Plaintiff claims Renteria violated his Eighth Amendment right to be free from cruel and unusual punishment because Renteria sexually assaulted him during two clothed body-searches on February 6, 2016, and June 25, 2016. (ECF No. 1 at 9-10.) Plaintiff claims that Romero violated his Eighth Amendment rights because he was present during the two Renteria searches at issue, observed the alleged assaults, but did not intervene. (*Id*. at 14-

15.) Defendants Renteria and Romero argue they are entitled to summary judgment because neither incident violated Plaintiff's Eighth Amendment rights and because they are entitled to qualified immunity.

### 1. Legal Standard

The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime. U.S. CONST. AMEND. VIII. A sexual assault on an inmate by a prison official implicates the rights protected by the Eighth Amendment. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). "[N]o lasting physical injury is necessary to state a cause of action." *Schwenk*, 204 F.3d at 1196. "Rather, the only requirement is that the officer's actions be 'offensive to human dignity.'" *Id.* (citation omitted). In order to prevail on an Eighth Amendment claim for an allegedly inappropriate body search, a plaintiff must demonstrate that the search amounted to the "unnecessary and wanton" infliction of pain. *Jordan v. Gardner*, 986 F.2d 1521, 1525-26 (9th Cir. 1993) (concluding opposite gender searches constituted more than mere "momentary discomfort" exhibited in other cases). However, "a single instance of physical contact, while sexually suggestive in nature, does not satisfy the standard set forth in *Schwenk*." *Castillo v. Valencia*, No. 19CV338-KJM-DB-P, 2019 U.S. Dist. LEXIS 95598, at *6 (E.D. Cal. June 5, 2019).

In evaluating a prisoner's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotations and citation omitted).

### 2. February 6, 2016 Incident—Renteria

Based on the totality of Plaintiff's allegations and his deposition, the February 6, 2016 incident amounted to Defendant Renteria momentarily squeezing Plaintiff's buttocks during a fully clothed pat-down in Donovan prison's recreation yard. Crediting Plaintiff's allegations and deposition testimony as true, the squeezing lasted "only second," it was not done in a "harsh way," and Renteria's actions were done "clowning around like that." As part of this search, Renteria touched Plaintiff's chest area, which is a normal part of the

search, but he did not pat down Plaintiff's groin area. There is also no evidence that Renteria made sexually suggestive comments during this incident.

The above conduct is not objectively egregious, as it is not uncommon for a correctional officer to squeeze an inmate's back pocket to determine whether an inmate is hiding contraband within a handkerchief in that pocket or to squeeze a portion of the buttocks in the process. *See Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998); *Castillo v. Valencia*, No. 19CV338-KJM-DB-P, 2019 U.S. Dist. LEXIS 95598, at *8 (E.D. Cal. June 5, 2019) (dismissing claims without leave to amend where "Plaintiff alleged the officers briefly touched [his] buttock incident to a search without sexual comment."). This incidental touching was part of a routine pat down—one that is part of the daily life of an inmate when leaving and coming back from the yard. *See Walker v. Whitten*, No. 2:09-CV-0642 WBS CKD, 2013 WL 943282, at *10 (E.D. Cal. Mar. 11, 2013). Moreover, no sexual comments were made, and the groin area was not searched. *See Castillo*, 2019 U.S. Dist. LEXIS 95598, at *8. Accordingly, Plaintiff cannot establish that Renteria's conduct on February 6, 2016 was objectively harmful enough to establish a constitutional violation. *See generally Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (finding no objectively serious conduct where guard entered cell while the inmate "was still on the toilet, rubbed his thigh against [the inmate's] thigh, 'began smiling in a sexual contact [sic] . . . .'"); *Cooper v. Roche*, No. ED-CV-17-38-PSG(PLA), 2018 U.S. Dist. LEXIS 176197, at *35-37 (C.D. Cal. Aug. 27, 2018) (allegations that guard "touched or rubbed the area between plaintiff's 'butt cheeks,'" did not give rise to constitutional violation).

Renteria's conduct also fails to satisfy the subjective requirement that he had a "sufficiently culpable state of mind." *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Plaintiff testified at deposition that Renteria was "clowning around like that," and made no sexual comments. This *at best* establishes that Renteria was merely *joking* with Plaintiff— not that he possessed the subjective intent to *sexually assault* Plaintiff. As a result, Plaintiff cannot establish that Renteria possessed the requisite sufficiently-culpable state of mind. *Berryhill*, 137 F.3d at 1076 (holding no Eighth Amendment violation where "[a]ccording

to Berryhill's deposition testimony, the brief touch to his buttocks lasted mere seconds, it was not accompanied by any sexual comments or banter, *and he thought the defendants were trying to embarrass him . . . .*") (emphasis added); *Castillo*, 2019 U.S. Dist. LEXIS 95598, at *8.

Based on the undisputed evidence in this case, there is no genuine issue of fact regarding whether the February 6, 2016 incident was objectively serious—it was not. Nor is there a genuine dispute of fact regarding Renteria's mental state—he lacked any culpable mental state to sexually assault Plaintiff.

### 3. June 25, 2016 Incident—Renteria

More than four months later, Renteria again conducted a fully-clothed pat-down of Plaintiff in the prison yard on June 25, 2016. This time, Renteria touched Plaintiff's nipples during the course of the pat-down. While standing behind Plaintiff, Renteria searched the sides of Plaintiff's torso, then Plaintiff's stomach, and then his hands went up to Plaintiff's chest. Renteria's hands were open, and his fingers were apart as he rubbed and "caressed" the front of Plaintiff's torso. When Renteria reached Plaintiff's nipples, Plaintiff alleges Renteria started "rubbing" Plaintiff's nipples with an open hand with his hand flat on Plaintiff's chest as he swept Plaintiff's torso. The touching of Plaintiff's nipples lasted no more than fifteen to twenty seconds. Thereafter, Renteria completed the search by patting the bottom part of Plaintiff's legs.

Here, Renteria's conduct on June 25, 2016 first fails to satisfy the requirement that the touching be objectively serious. Even if Renteria "caressed" the front of Plaintiff's torso and nipples in the manner Plaintiff describes, the one-time, isolated touching of non-genitalia fails to rise to the objectively serious touching required for a federal claim alleging a constitutional violation. Indeed, the touching in this case was objectively less serious than touching in other cases that have also failed to meet this threshold. *See, e.g., Watison*, 668 F.3d at 1112 (no Eighth Amendment violation where officer "approached [an inmate] while [the inmate] was still on the toilet, rubbed his thigh against [the inmate's] thigh, began smiling in a sexual [context], and left the cell laughing."); *Rice v. King Cnty.*, 2000

7

17-CV-2104-CAB(WVG)

U.S. App. LEXIS 29897 (9th Cir. 2000) (No Eighth Amendment violation where prison guard "shoved her hand very hard into" inmate's testicles during a search); *Smith v. L.A. Cnty.*, 2010 U.S. Dist. LEXIS 61985 (C.D. Cal. Apr. 22, 2010) (finding that pretrial detainee failed to state due process claim, or unreasonable search claim, based on allegations that guard pulled inmate's boxers to look at his buttocks, inserted his hand between inmate's buttocks, and cupped inmate's genitals during search), *adoption aff'd*, 452 F. App'x 768 (9th Cir. 2011); *Ganner v. Gibson*, No. CIV-S-08-1445-GGHP, 2009 U.S. Dist. LEXIS 107755 (E.D. Cal. Nov. 2, 2009) (No Eighth Amendment violation where prison guard "rubbed [inmate's] legs, thighs and buttocks" during a search).

The facts of the instant case are a far cry from *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993), where the Ninth Circuit held that the Eighth Amendment prohibited clothed body searches of female prisoners by male guards directed by a prison policy to "push inward and upward when searching the crotch and upper thighs of the inmate," to "squeeze and knead" "the leg and the crotch area," and to "search the breast area in a sweeping motion, so that the breasts will be 'flattened.'" 986 F.2d at 1523 (indications of alteration omitted). While the touching in that case was also part of a routine pat-down search—and indeed sanctioned by prison policy—the opposite-gender touching there was far more invasive and prolonged than what transpired here by a male guard against a male inmate. When compared to *Jordan*, the touching Plaintiff describes was not serious. The touching did not involve his genitalia, no sexual comments were made, and the incident was isolated. *See generally Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005) (guard's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards).

There is also no evidence of Renteria's subjective mental state to sexually assault Plaintiff in any way. Plaintiff never alleged in his Complaint that Renteria made any sexually suggestive comments to him during this incident, and no such evidence has been uncovered since then.

Based on the undisputed evidence in this case, there is no genuine issue of fact regarding whether the June 25, 2016 incident was objectively serious—it was not. Nor is there a genuine dispute of fact regarding Renteria's mental state—he lacked any culpable mental state to sexually assault Plaintiff.

### 4. Eighth Amendment Claim Against Romero

Although Plaintiff never alleges or testifies that Defendant Romero had any physical contact with him, he proceeds on an Eighth Amendment claim on the theory that Romero failed to intervene in Renteria's violations of Plaintiff's Eighth Amendment rights. However, because this Court has concluded that Renteria did not violate Plaintiff's rights in the first place, it necessarily follows that Romero cannot be vicariously liable for such a non-violation. Accordingly, Romero is entitled to summary judgment to the same extent as Renteria.

### 5. Renteria and Romero are Entitled to Qualified Immunity

Renteria and Romero argue they are entitled to qualified immunity because under the circumstances, "any prison official 'could have believed [their] actions lawful at the time they were undertaken.'" (ECF No. 30 at 18 (quoting *Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009). This Court agrees.

#### a. Legal Standard

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). The reasonableness of the officer's conduct is "judged against the backdrop of the law at the time of the conduct." *Id.* (quotation marks and citation omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane*, 903 F.3d at 933. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201.

### b. Discussion

Here, Renteria and Romero are entitled to qualified immunity both because there was no constitutional violation and because such a right was not clearly established even if the Court assumes a constitutional violation existed for the sake of argument. First as explained above, the undisputed evidence in this case has established that Renteria and Romero did not violated Plaintiff's Eighth Amendment rights. Second, even if the Court assumes that Renteria's conduct did constitute an Eighth Amendment violation, he is nonetheless entitled to qualified immunity because no court has held that the minimal touching Plaintiff experienced here was sufficiently objectively serious to rise to the level of an Eighth Amendment violation. In other words, the right to be free from such minimal touching under the Eighth Amendment was not clearly established at the time of the two incidents in 2016.[1] Likewise, Romero is entitled to qualified immunity because it was not clearly established that standing and watching such minimal touching constituted an Eighth Amendment violation.

---

[1] Nor has such a right been established since then.

### 6. Conclusion

Now that the full array of the facts in this case have come to light, it is clear that Plaintiff's Eighth Amendment claims are wholly meritless. As the United States District Court for the Eastern District of California recently found in a strikingly similar case brought by Plaintiff in that District, "[n]o single incident described in the complaint was severe enough to be 'objectively sufficiently serious,' nor are the incidents cumulatively egregious in the harm they inflicted."[2] *Castillo v. Valencia*, No. 19CV338-KJM-DB-P, 2019 U.S. Dist. LEXIS 95598, at *8 (E.D. Cal. June 5, 2019) (dismissing Plaintiff's similar claims against other corrections officers without leave to amend). So too here, Plaintiff has established only objectively non-serious touching during a pat-down and nothing more. Defendants Renteria and Romero are entitled to summary judgment as to the Eighth Amendment claim against them.

Finally, and with the foregoing notwithstanding, Renteria and Romero are entitled to qualified immunity even if a constitutional violation is assumed.

### B. First Amendment Claim Against Segovia

Plaintiff asserts that Segovia retaliated against him by threatening to choke and kill him because of the prison grievances he had field against Renteria and Romero. Segovia argues he is entitled to summary judgment because the alleged choking incident did not violate Plaintiff's First Amendment rights. This Court finds that because Plaintiff cannot establish all of the elements of a First Amendment violation, Segovia is entitled to summary judgment.

It is well-established that prisoners have a First Amendment right to file prison grievances. *See Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269

---

[2] Although Plaintiff alleges two separate incidents against Renteria and Romero, two incidents separated by four months hardly constitute a series or pattern of abusive conduct.

(9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 566). In order to prevail on a First Amendment retaliation claim in the prison context, Plaintiff must prove (1) "that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

With respect to the fourth element, Plaintiff need not demonstrate a "total chilling of his First Amendment rights," only that Segovia's challenged conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568-69. Direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. *Id*. at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. *Brodheim*, 584 F.3d at 1269 (citing *Rhodes*, 408 F.3d at 568 n.11).

Here, Segovia is entitled to summary judgment because the undisputed material facts demonstrate that Plaintiff cannot establish the fourth element of a First Amendment retaliation claim. Segovia argues that even if he threatened to kill Plaintiff, Plaintiff's speech was not chilled because (1) Segovia immediately retreated from his physical threat once Plaintiff saw his nametag and (2) "Plaintiff himself concedes that he knew no more intimidation would follow." (ECF No. 35 at 9.) Indeed, in his opposition to Defendants' MSJ, Plaintiff concedes that he "knew that no more intimidation would follow since he knew Sgt. Segovia's name." (ECF No. 11-12.) In other words, Plaintiff knew that Segovia's threats were idle, and they accordingly were not the type of threats that would chill or silence an inmate or ordinary firmness. This concession is significant because "[t]he power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Brodheim*, 584 F.3d at 1271. Here, there is no evidence that Segovia took any subsequent action against Plaintiff, and Plaintiff concedes that Segovia's threats created *no* apprehension in him because he knew there would be no

further intimidation. Accordingly, because Plaintiff cannot establish the "chilling effect" element of his First Amendment claim, Segovia is entitled to summary judgment on this claim.

### IV. CONCLUSION

For the reasons stated, the Court RECOMMENDS Defendants' summary judgment motion be GRANTED and that judgment be entered in their favor.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED that no later than <u>September 6, 2019</u>**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." **No reply briefs in response to the Objections will be accepted.**

**IT IS SO ORDERED.**

DATED: August 5, 2019

Hon. William V. Gallo
United States Magistrate Judge